## Administrators of ANDREW EMMONS v. DAVID STAHLNECKER.

1. Testimony, in order to overcome a settlement made by the parties themselves, and to establish a mistake therein, ought to be clear and satisfactory, and not encumbered with reasonable doubts.

2. Delay in pursuing the remedy to rectify a mistake of this nature for nearly four years after it becomes known to the original party, and until after his death, is a circumstance in favour of the defendant.

ERROR to the Common Pleas of Northumberland.

This case originated before a justice of the peace, and came into the court below on appeal. The administrators of Emmons were the plaintiffs, and Stahlnecker was defendant. The claim was for the price of 1100 pounds of bar iron, which the plaintiffs alleged was omitted in a settlement that took place between their intestate and the defendant.

The facts of the case are fully summed up in the following charge, delivered by ANTHONY, President:—

"It appears that, Stahlnecker the defendant being a blacksmith, Andrew Emmons was in the habit of supplying him with iron. In the year 1841, Samuel Shannon traded Emmons a horse, valued at $60, for 1100 pounds of iron. The horse was shortly afterwards

delivered to Emmons, but the iron was not sent to Shannon till the next winter.   Shannon, however, not wanting the iron, and having some outstanding notes against him in favour of Mr. Hower, which Stahlnecker had got, an arrangement was made that Stahlnecker should get the iron that was coming from Emmons to Shannon for the horse; he therefore sets down in his book $60 against Emmons, till he should obtain the iron; and, according to the testimony of Samuel Shannon, he hauled the iron to Stahlnecker in the spring of 1842, at M'Ewensville, and weighed out to Stahlnecker the 1100 pounds of iron, and some more iron was left by Shannon for Stahlnecker at the same time at M'Ewensville.   When Stahlnecker received this 1100 pounds of iron, as it paid the $60, he should have given credit for it to the account of Andrew Emmons; and the only question of difficulty is whether Stahlnecker credited Emmons with this iron on his book.   On the 24th of February, 1843, a settlement was made between Andrew Emmons and David Stahlnecker, and a note was given under seal by Stahlnecker to Emmons, on that day, for $111, being the balance due Emmons on the settlement, as appeared by Stahlnecker's books.   Shortly after this, Emmons called on Mr. Shannon to go with him to Stahlnecker about a mistake Emmons alleged in the settlement.   They went together, and Emmons told Stahlnecker that they had come to examine about the mistake of the credit, that Emmons should have had, of the 1100 weight of iron.   David got the book, and they examined; the witness says he saw no account of that kind. . Emmons said, David, you have forgot to give me credit for that account of iron. David said, I guess it must be so, I will fix it again.   David said he had kept a regular account of both debt and credit, and that he had credited all the iron he got, when they were before the justice. Where a settlement is made, it is presumptive evidence that it was honestly, fairly, and justly done; and he who wishes to overhaul the settlement, must satisfy the jury by clear and convincing evidence that there was an error or mistake.

" The proof should be of that kind that will satisfy a jury that a mistake occurred, and that the 1100 pounds of iron were not in the account that was settled.

" As this is a question of fact entirely for the consideration of the jury, you will examine the testimony of Samuel Shannon, as well as the books, and determine the case according to the evidence. If you are satisfied that this iron was not included in the account, then the plaintiffs ought to recover.   *But if you have reasonable*

*doubt on the subject, those doubts will operate in favour of the defendant.*

"It is alleged by the counsel of the defendant that Mr. Shannon is mistaken as to the year when this transaction took place, and they have urged this as an objection to the correctness of his testimony. All men are liable to err, and there is often a difficulty in recollecting particular dates: the jury will, however, consider the testimony of Mr. Shannon, and give it such weight as you believe it entitled to.

"*It is also alleged, that Emmons lived about four years after the settlement was made, and also, that he spoke of the alleged error or mistake shortly after it occurred, yet no suit was brought to rectify it in his lifetime. This is a circumstance in favour of the defendant, as it is proper that errors should be rectified without unreasonable delay,* when the facts are recent; and the jury will consider this, and all the other facts and circumstances in the cause; and if you are satisfied that the 1100 pounds of iron were not accounted for by Stahlnecker, then your verdict should be for the plaintiff, for its value and interest; but if otherwise, your verdict ought to be for the defendant."

To this charge the plaintiff excepted, and the verdict went in favour of the defendant. In this court, the assignment of errors was to those parts of the charge which are printed in italics.

*Miller* and *Lawson*, for the plaintiff in error, cited Wharton's Am. Crim. L. 190, as to the first error, and Foulk *v.* Brown, 2 W. 217, as to the second.

*Porter*, for defendant in error.

The opinion of this court was delivered by

COULTER, J.—A settlement of accounts between the parties took place in the lifetime of Emmons, a balance was struck, and a note given by Stahlnecker for this balance, being $110. It appears that Emmons mentioned to Stahlnecker, before his death, that there was a mistake in the settlement; but nothing was done to correct it, if there was a mistake, in his lifetime, and he lived four years after the settlement. This action is brought after the death of Emmons, to recover the amount of the mistake on settlement.

The settled account was the strongest kind of evidence in favour of defendants; because it was the mutual admission of each of the parties, deliberately made, and reduced to writing, and a note given for the balance. And to allow it to be overcome by uncertain or

doubtful evidence, four, five, or six years after it was made, would not only subvert the law of evidence, but the law of justice. The court told the jury, that whether a mistake had been made in the settlement, was a question of fact for their determination, and that they must examine all the evidence, and determine accordingly. It was not error to add, that if they had reasonable doubts on the subject, these doubts ought to operate in favour of the defendant. Because the settlement and note given in pursuance thereof was *primâ facie* evidence that all was right, and it could only be obliterated by clear and satisfactory proof, otherwise no man would be safe, after having made a settlement of accounts and reposed upon it for years, and probably destroyed vouchers, or permitted them to be lost. Even taking the authority on which the ingenious counsel relies, Wharton's Criminal Law, to wit, that there is "A ground of distinction in this respect between civil and criminal cases. In the former, the jury weigh the testimony, and, after striking a fair balance, decide accordingly. But in criminal cases, the testimony must be such as to satisfy the jury beyond a doubt." As the true and veritable rule on this subject, he is overborne by it. In *striking a fair balance*, that which is doubtful is not equal in weight to that which is certain in any well balanced mind. The scales of justice obey the impulse of what is certain and established, rather than that which is doubtful and shadowy, and therefore light.

The court told the jury nothing more in substance, than that testimony, in order to overcome a settlement made by the parties themselves, and to establish a mistake therein, ought to be clear and satisfactory, and not encumbered with reasonable doubts; and if they had told them less, they would not have done their duty.

The court express an opinion that so long delay after the settlement, before decedent's death, and no suit brought until after he was in his grave, was a circumstance in favour of defendant; and so it was. But this was only an expression of opinion by the judge, on the evidence. He left all the evidence to the jury, told them it was a question of fact for their decision; he gave no binding direction as to any fact, nor did he err on any question of law.

Judgment affirmed.

VOL. XI.—47

# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT, SEPTEMBER TERM, 1849.

PITTSBURGH.